**Jennifer L Crow**
503-446-1767
jen@scheer.law
Licensed in OR, WA, ID & MT



July 10, 2020

<u>**VIA EMAIL**</u>
Laurie Bruyere
OneBeacon Insurance Group
188 Inverness Drive W
Suite 600
Englewood, CO 80122
LBruyere@onebeacon.com

Re:    <u>*Domion v. TriQuint Semiconductor, Inc.*</u>
       Liberty Claim No.          :    WC604-A58856
       One Beacon Claim Nos.   :    0AB170997
       One Beacon Policy No.    :    711-00-98-39-0001
       Our File No.             :    170.801

Dear Laurie:

Our office is acting on behalf of Liberty Northwest Insurance Corporation with respect to the above referenced matter.

We write to hereby tender the defense and indemnity of this matter to OneBeacon America Insurance Company under Policy Nos. 711009839-0001 (policy period June 1, 2008 – June 1, 2009) and 711009839-0002 (policy period June 1, 2009 – June 1, 2010) (collectively, the "OneBeacon Policies").

We are in receipt of your correspondence to mutual insured TriQuint Semiconductor, Inc. ("TriQuint") denying a duty to defend under the OneBeacon Policies.  For the reasons set forth below, the coverage positions set forth by OneBeacon with respect to the defense and indemnity of TriQuint are defective and inaccurate under Oregon law.  We hereby request that you reconsider your prior coverage position in light of Oregon law regarding an insurer's obligations to defend and indemnify.

## I.   <u>BACKGROUND</u>

This matter arises out of a Complaint filed by Pedro Domion and Ashley Domion as Guardian Ad Litem for Nicholas Domion (collectively, "Plaintiffs") alleging permanent and severe injuries to Nicholas Domion arising out of Pedro Domion's work for TriQuint.

TriQuint is a semi-conductor manufacturer, which operates a facility in Oregon where Plaintiff Pedro Domino worked as an employee.  Pedro Domion worked in

2101 Fourth Ave., Suite 830 ▪ Seattle, WA 98121
Office (206) 800-4070  Direct (206) 436-3661
www.scheer.law

LNIC000351

Laurie Bruyere
July 10, 2020
Page 2

the "clean rooms" at the facility, which allegedly required him to come in contact with various chemical products used in the manufacturing process for TriQuint's semi-conductor products. The particular components are described in detail in the Complaint, but include glycol ethers, cyanide, fluorine compounds, chlorinated compounds, arsenic compounds, ionizing radiation, and radio frequency radiation. It is alleged that Pedro Domion had repeated exposures to these chemical products, which are claimed to have known reproductive risks.

Plaintiffs allege that due to Pedro Domion's exposure, his son, Nicholas Domion, suffered numerous injuries, including (a) 9P chromosomal deletion; (b) cranial stenosis; (c) undescended testicles; (d) heart defects; (e) mental and cognitive impairment; and (f) internal injuries.

## II.  PROCEDURAL STATUS

On July 5, 2016, Plaintiffs filed a Complaint in Multnomah County Circuit Court. Defense counsel for TriQuint removed the case to the U.S. District Court for the District of Oregon. A copy of Plaintiffs' Complaint is attached as Exhibit 1. The Complaint brings claims for negligence, intentional torts, strict liability, breach of duty, and loss of consortium.

With respect to the Plaintiffs' claims, the Complaint includes the following allegations:

8. While working for TRIQUINT, Pedro Domion worked in proximity to and/or was exposed to chemical product and substance that were utilized in the manufacture of semiconductor products or components.

11. The work of Pedro Domion in manufacturing the aforesaid semiconductor products or components and/or otherwise working in proximity to such manufacture required him to use, come into contact with, and/or work in proximity to some or all of the aforementioned chemical products and substances.

13. The work of Pedro Domionin manufacturing the aforesaid semiconductor products or components and/or otherwise working in proximity to such manufacture resulted in his repeated and prolonged contact with and exposure to some or all of the aforementioned chemical products and substances.

24. The aforesaid industrial hygiene policies did not include reasonable standards, regulations or guidelines to protect the health and safety of those persons, including Pedro Domion and his offspring, who would

Laurie Bruyere
July 10, 2020
Page 3

foreseeably be exposed to or affected by some or all of the aforesaid chemical products and substances.

25. The aforesaid industrial hygiene policies did not include reasonable standards or regulations to minimize the dangers to those persons, including Pedro Domion and his offspring, who would foreseeably be exposed to or affected by some or all of the aforesaid chemical products and substances.

26. The aforesaid industrial hygiene procedures did not include reasonable methods, processes or controls to prevent worker exposure to some or all of the aforesaid chemical products and substances in excess of recognized levels and standards.

37. The aforesaid chemical products and substances to which Pedro Domion was exposed were defective, unsafe and/or unreasonably dangerous.

39. At all relevant times TRIQUINT failed and/or refused to warn workers, including Pedro Domion, about the dangerous and reproductively toxic characteristics of some or all of the aforesaid chemical products and substances, including their capacity to harm the offspring of exposed males.

41. At all relevant times TRIQUINT failed and/or refused to warn workers, including Pedro Domion, about the potential for adverse reproductive outcomes, including miscarriage, stillbirth and/or birth defects, among their offspring posed by exposure of workers such as Pedro Domion to some or all of the aforesaid chemical products and substances.

42. At all relevant times TRIQUINT failed and/or refused to warn workers, including Pedro Domion, about the potential injuries to their offspring posed by exposure of workers such as Pedro Domion to some or all of the aforesaid chemical products and substances.

51. At all relevant times TRIQUINT had a non-delegable duty to use reasonable care for the safety and protection of Pedro Domion from exposure to reproductively toxic, geotoxic, mutagenic, hazardous, and teratogenic chemicals, including the aforesaid chemical products and. substances in the workplace:

LNIC000353

Laurie Bruyere
July 10, 2020
Page 4

52. At said time and place, notwithstanding its aforesaid duties TRIQUINT was then and there guilty of one or more of the following wrongful acts and/or omissions;

d. Failed to warn workers, including Pedro Domion, about the potential for adverse reproductive outcomes, including miscarriage, stillbirth and/or birth defects among their offspring, posed by exposure of workers to some or all of the aforesaid chemical products and substances;

e. Failed to warn workers, including Pedro Domion, about the potential injuries to their offspring posed by exposure of workers to some or all of the aforesaid chemical products and substances;

f. Failed to comply with reasonable standards and/or regulations designed to protect the health and safety of those persons, including Pedro Domion and their offspring, who would foreseeable be exposed to some or all of the aforesaid chemical products and substances.

54. The personal injuries of Nicholas Domion were caused or contributed to by his fathers' wrongful exposure to some or all of the aforesaid chemical products and substances as a result of his work at the aforesaid TRIQUINT'S facility.

57. As a direct and proximate result and consequence of TRIQUINT'S wrongful conduct and Plaintiff Pedro Domion's exposure to the aforesaid chemical products and substances, Nicholas Domion sustained injuries and/or damages . . .

64. At all relevant times TRIQUINT had a non-delegable duty to refrain from willful, wanton or reckless conduct which would cause Mr. Domion to be exposed to and/or affected by reproductively toxic, genotoxic, mutagenic, hazardous, and teratogenic chemicals, including the aforesaid chemical products and substances, in the workplace.

There is a mediation set in this matter for July 14, 2020 with retired Judge Jean Maurer. We request that OneBeacon be available to participate in mediation.

### III. ONEBEACON POLICY

OneBeacon issued the following insurance policies to TriQuint: Policy No. 711-00-98-39-0001 (policy period June 1, 2008 – June 1, 2009); and Policy No. 711-00-98-39-0002 (policy period June 1, 2009 – June 1, 2010). The OneBeacon

Laurie Bruyere
July 10, 2020
Page 5

policies include limits of $1,000,000 per occurrence under the commercial general liability coverage and we understand each commercial general liability policy has an umbrella policy above it with coverage limits of $5,000,000 per occurrence.

The OneBeacon Policies include the following language with respect to their insuring agreements:

COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.      Insuring Agreement**

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

      b.      This insurance applies to "bodily injury" and "property damage" only if:

          (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

          (2)      The "bodily injury" or "property damage" occurs during the policy period; and

          (3)      Prior to the policy period, no insured listed under Paragraph 1. of Section II -Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

The OneBeacon Policies include the following language with respect to their exclusions:

      **e.      Employer's Liability**

"Bodily injury" to:

(1)      An "employee" of the insured arising out of and in the course of:

      (a)      Employment by the insured; or

Laurie Bruyere
July 10, 2020
Page 6

        (b)     Performing duties related to the conduct of the insured's business; or

(2)     The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

**f.    Pollution**

(1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

       (i) "Bodily injury" if sustained within in a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

       (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

       (iii)     "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

       (i)     Any insured or;

       (ii)    Any person or organization for whom you may be legally responsible; or

(d)     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.  However, this subparagraph does not apply to:

       (i)     "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the

LNIC000356

Laurie Bruyere
July 10, 2020
Page 7

operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fluids, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor;

(ii)   "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii)     "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The OneBeacon Policies include the following language with respect to their defined terms:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

The OneBeacon Policies include the following endorsement:

Laurie Bruyere
July 10, 2020
Page 8

## ELECTROMAGNETIC RADIATION - EXCLUSION OF COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to bodily injury, property damage, personal injury or advertising injury arising out of or allegedly due to exposure to or contact with Electromagnetic Radiation.

The Company has no obligation under this insurance:

1)     to investigate, defend or settle any claim or suit against any insured alleging actual, threatened, perceived, latent, sudden and accidental or intentional injury of any kind or nature or damage of any kind or nature to persons or property which arises out of or is alleged to have been caused by or contributed to by the exposures to or contact with the existence of Electromagnetic Radiation.

2)     to pay any damages, judgments, settlements, loss penalties, assessments, apportionments, costs or expenses including damages mandated, required or ordered by local, state or federal statute and/or legislative action and/or damage as stated in (1) above or in complying with any action authorized by law, and relating to such injury or damages.

The definition of Electromagnetic Radiation includes but is not limited to magnetic energy, waves, fields, or forces generated, produced, distributed, transmitted or maintained by the charges, currents, frequencies, energy or forces of electricity that is generated, flowing or otherwise transmitted through or by way of the medium, methods and equipment designed to generate, produce, distribute, transport or transmit the electrical charges, currents, frequencies, energy or forces.

## IV. <u>APPLICABLE LAW</u>

Under Oregon law, an insurer's duty to defend is determined by comparing the terms of the insurance policy with the allegations of the complaint filed against the insured. *Ledford v. Gutoski*, 319 Ore. 397, 399-400 (1994); *Marleau v. Truck Ins. Exch.,* 333 Ore. 82, 89 (2001); *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Mass. Bonding & Ins. Co.,* 235 Ore. App. 99, 119 (2010).

The test for whether there is a duty to defend is whether the complaint "could, without amendment, impose liability for conduct covered by the policy." *Ledford,* 319 Or at 399–400.  Therefore, if the complaint provides any basis for a claim that is covered

Laurie Bruyere
July 10, 2020
Page 9

by the policy, there is duty to defend. A duty to defend is owed if a complaint alleges both covered conduct and excluded conduct. _Abrams v. General Star Indem. Co.,_ 335 Or 392, 399–400 (2003).

Indeed, the Oregon courts have articulated the broad duty-to-defend standard this way: "[A] duty to defend exists whenever the factual allegations in the complaint would permit the presentation of evidence at trial of an activity covered by the policy." _Fireman's Fund Ins. Co. v. Ed Niemi Oil Co., Inc.,_ 2005 WL 3050460, at *1 (D. Or. Nov. 9, 2005) (citing _Schnitzer Inv. Corp. v. Certain Underwriters at Lloyd's of London_, 104 P.3d 1162, 1169 (Or. Ct. App. 2005)). Further, in assessing whether it has a duty to defend, OneBeacon is required to liberally construe the Complaint. _See Ledford,_ 319 Or. at 400 ("Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured."); _United States Fid. & Guar. Co. v. Star Technologies, Inc.,_ 935 F. Supp. 1110, 1113 (D. Or. 1996) ("If the complaint is unclear or ambiguous and may be reasonably interpreted to include an incident within the coverage of the policy, the insurer has a duty to defend."); _Bresee Homes, Inc. v. Farmers Ins. Exchange_, 353 Or. 112, 117 (2012).

Moreover, if the duty to defend is triggered, the insurer has an obligation to defend the _entire_ suit. _See Farris v. U.S. Fidelity & Guaranty_, 273 Or. 628, 636, 542 P.2d 1031 (1975) (holding that if a complaint contains both allegations that are potentially covered and allegations or claims that clearly fall outside the scope of coverage, the insurer has a duty to defend the entire action).

If there is any conduct alleged in the Complaint that could be covered by the OneBeacon Policies, OneBeacon owes TriQuint a duty to defend. If the duty to defend is triggered, the insurer has an obligation to defend the entire suit. OneBeacon is required to liberally construe the Complaint in favor of the insured. If there is any conduct alleged in the Complaint that potentially could be covered by the OneBeacon Policies, OneBeacon owes TriQuint a duty to defend.

## V. <u>COVERAGE DISCUSSION</u>

We address each of OneBeacon's coverage positions below.

### A. <u>Employer's Liability Exclusion</u>

OneBeacon denies coverage for TriQuint under the Employer's Liability exclusion. The pertinent language of the exclusion is as follows:

"Bodily injury" to:
(1)    An "employee" of the insured arising out of and in the course of:
    (a)    Employment by the insured; or
    (b)    Performing duties related to the conduct of the insured's business; or

Laurie Bruyere
July 10, 2020
Page 10

(2)    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

    *i.    Application of Policy Language*

Under the language of the exclusion, in order for the exclusion to apply with respect to a claim of a child of an "employee," there must be a bodily injury to the employee by which TriQuint is obligated to pay damages.  The operation of the second subsection of the exclusion, as applicable to the claim of an employee's child, is dependent on there being a bodily injury to the employee.  In other words, if there was no bodily injury to the employee, this exclusion would not apply because the second portion of the second subsection of this exclusion would not be satisfied.

The purpose of this type of exclusion is "to exclude from coverage bodily injury claims of employees that arise out of and in the course of their employment, but that are not workers' compensation claims, unemployment compensation claims, disability claims, or claims under similar laws." *McLeod v. Tecorp, Int'l, Ltd*., 318 Or 208, 217 (1993). This exclusion, together with a worker's compensation exclusion, excludes all employees' bodily-injury claims arising from their employment from liability insurance coverage.  *Id.*

Again, the Employer's Liability exclusion is designed to apply to bodily injury claims of employees – along with claims of certain relatives who are injured as a consequence of the employee's bodily injury.

A careful reading of the Complaint reveals a lack of allegations establishing that Pedro Domion suffered a "bodily injury" as defined by the OneBeacon Policies.  The Complaint does not include allegations establishing that Nicholas Domion suffered a consequential injury versus a direct injury – leaving each a possibility and therefore triggering OneBeacon's duty to defend.

    *ii.    There is a Duty to Defend in Cases Where Allegations can be Read as Alleging a Direct Injury*

The issue as to whether or not a commercial general liability carrier's duty to defend has been triggered in cases where there is a dispute as to a direct versus consequential injury has previously been addressed.

 In *Royal Ins. Co. of Am. V. Insignia Fin. Group*, a court addressed whether a commercial general liability policy's duty to defend was triggered based on claims regarding an in utero injury. 751 N.E.2d 164 (2001).  There, a mother was pregnant when she received an electric shock during her employment.  *Id.* at 167.  The commercial general liability carrier, Royal Insurance, denied coverage based on the Employer's Liability exclusion (which included the consequential injury to a child

Laurie Bruyere
July 10, 2020
Page 11

language similar to that in the OneBeacon Policies). *See Id*. On an appeal from a grant of summary judgment in Royal's favor regarding any duties to defend and indemnify, Royal argued that the exclusion applied because the claimed injury was a consequential injury rather than a direct injury. *Id*. Within the same proceeding, the employer's liability carrier (Reliance) was arguing that the injury was a direct injury. *Id*. at 170.

Reliance argued that because the injury was due to a single cause – the electric shock, the injury was direct. *Id*. Royal, argued that the injury was consequential because the child was injured as a consequence of the shock to the mother. *Id*.

The insured, Insignia, argued that both carriers owed defense obligations as it was impossible to determine whether or not the child suffered a direct or consequential injury due to the conflicting evidence. *Id*. at 172. The appellate court determined that the trial court erred in granting summary judgment as there was a factual issue as to whether the child suffered a direct injury or a consequential injury. *Id*. at 173.

A recent Texas case also addressed the same issue. *See Colony Ins. Co. v. Hearts with Hope Found*., 2018 U.S. Dist. Lexis 32280 (2018). There, a woman was working in an organization (Hearts with Hope) that cared for children with mental disturbances while pregnant, when she was hit in the stomach. *Id*. at 2. The hit caused her amniotic sac to rupture and the baby was born prematurely with physical injuries. *Id*. Hearts with Hope tendered the claim to its commercial general liability carrier, which denied any obligation to defend or indemnity. *Id*. The carrier, Colony Insurance, filed a declaratory judgment action and a motion for summary judgment. Id.

The Colony Insurance policy includes the same exclusion as the one in the OneBeacon Policies. The issue on appeal was whether or not the complaint alleged a direct injury to the child – if it did not, the exclusion would apply and there would be no duty to defend. *Id* at 9.

Colony argued that there was no allegation of direct contact, and that direct contact was not possible because the child could not have been injured without injury to the mother. *Id*. at 11. The court noted that the allegations as written, did not preclude a direct injury as it alleged that the hit caused the child's injury. *Id*. The court emphasized that the reference to "consequence" implies a form of causation. *Id*. at 12. "Undoubtedly, a mother will almost always suffer some injury if the fetus inside of her is injured by an external force. However, the mother's injury does not always result in the fetus's injury." *Id*. Viewing the allegations in a light favorable to the insured, the allegations can be read as indicating the child would have been injured even if the amniotic sac did not rupture. *Id*. Therefore, Colony Insurance owed a duty to defend.

LNIC000361

Laurie Bruyere
July 10, 2020
Page 12

Under established case law, if the Complaint can be read as alleging a direct injury to Nicholas Domion, and not only a consequential injury due to an injury to Pedro Domion, the Employer's Liability exclusion does not apply to preclude a duty to defend.

     *iii.    The Complaint can be Read as Alleging a Direct Injury to Nicolas Domion*

The Complaint in this matter, as written, does not make clear the mechanism of injury to Nicolas Domion.

To be clear, at no point does the Complaint allege that Pedro Domion was ever injured.  Rather, the allegations state that Pedro Domion was exposed to various dangerous chemical products.  The Complaint lacks any allegations that Pedro Domion was injured himself.

"Bodily injury" is defined in the OneBeacon Policies to include "bodily injury, sickness or disease."  There are no allegations claiming that Pedro Domion has suffered an illness or disease due to the chemical products.  There are no allegations that Pedro Domion suffered an injury due to his exposure to the chemical products.

Pedro Domion suffering an injury is a prerequisite for the Employer's Liability exclusion to apply – and the Complaint does not include such allegations.  OneBeacon cannot equate allegations referencing alleged chemical exposure to Pedro Domion with allegations that Pedro Domion suffered a bodily injury.  Thus, the requirement that there be an injury to Pedro Domion is not met by reviewing the four corners of the Complaint.  While OneBeacon may infer that the exposure has injured Pedro Domion, that inference cannot be used to defeat a duty to defend.

Further, it appears that OneBeacon has presumed that the injury to Nicholas Domion occurred at conception – in that the exposure to Pedro Domion caused his sperm to be affected, causing the injuries claimed by Plaintiffs.  This is not alleged in the Complaint, and the time at which Nicholas Domion's injuries occurred is a factual issue.  For the injury to be due to Pedro Domion's exposure, the father, there must have been damage to his sperm prior to conception.

The above cases address allegations of injury to the mother – this matter is one step further removed from those cases as it involves the father.  The Complaint has no allegations regarding how the exposure caused Nicholas Domion's injuries.  It can be inferred, as done by OneBeacon, that the exposure damaged Pedro Domion's sperm and that the damaged sperm caused the claimed injuries.  However, it can also be inferred that the exposure was brought home and was absorbed while Nicholas Domion was in utero – without injury to Mrs. Domion.

Laurie Bruyere
July 10, 2020
Page 13

While extrinsic evidence is not to be considered by OneBeacon with respect to a duty to defend analysis, such consideration does not negate its duty to defend. The report from Plaintiffs' experts noted that "[t]he mechanisms for these defects appear to be multifactorial. It has been proposed that these associations are due to a direct effect on gametic DNA, i.e. the DNA inside sperm, but, an indirect effect is difficult to exclude in humans, as toxicants can also be transmitted to the mother from contaminated clothing or via seminal fluid."   See Exhibit 2.

A plain reading of the Complaint shows the lack of allegations specifying the causation and mechanism of injury.  It could have been due to an impact to the gametic DNA, or it could have been due to chemicals reaching Nicholas through contaminated clothing that came home with his father.  Neither cause is specified in the Complaint, and both can be reasonably inferred.  Because the Complaint does not specify the causation, it provides a basis on which the Employer's Liability exclusion would not apply to this matter.   Thus, under Oregon law, OneBeacon has a duty to defend TriQuint against Plaintiffs' claims.

**B. <u>Pollution Exclusion</u>**

OneBeacon cited to the pollution exclusion within the OneBeacon Policies as another basis to deny coverage.

In order to trigger the pollution exclusion, the "bodily injury" must arise out of the "alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"  "Pollutants" is defined in the OneBeacon Policies to be "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

*i.   The Complaint Alleges Exposure to Non-Pollutants*

The substances that Pedro Domion claims to have been exposed to include the following:

- Glycol ethers (ethylene and propylene)
- Photoresist systems over and above the above ethers;
- Chemicals used in plating and etching;
- Cyanide;
- CEMIK
- Flourine compounds;
- Chlorinated compounds
- Acids;
- Radio frequency radiation and ionizing radiation;

Laurie Bruyere
July 10, 2020
Page 14

- Arsenic compounds;
- Volatile organic degreasing and cleaning solvents;
- Organic solvents;
- Hexamethyldisilizane;
- Mercury
- Acetone
- Phosphorus compounds including phosphine gas;
- Isopropyl alcohol;
- Developers and strippers used in the photo process; and
- Epoxy resin based glues.

Certain of the above substances are not pollutants. Mercury has not been found to be a pollutant – as it is a natural part of the earth. *See County of Santa Clara v. United States Fid. & Guar. Co.*, 1993 U.S. Dist. LEXIS 19019. The definition of "pollutants" does not include radiation of any form. Because Plaintiffs have alleged bodily injuries arising out of exposure to non-pollutants, OneBeacon cannot rely on the pollution exclusion to deny a defense for this claim.

### ii. *The Complaint Alleges Proximity Exposure to Pedro Domion, not a Discharge or Release*

As OneBeacon is surely aware, courts are deeply divided regarding the application of the pollution exclusion. Some courts apply it literally and some have limited the exclusion to situations involving traditional environmental pollution. *See Apana v. TIG Ins. Co.* (9th Cir. 2009); *Century Sur. Co. v. Casino W., Inc.*, 677 F.3d 903 (9th Cir. 2012). Results vary drastically depending on which approach is applied. Oregon courts construe exclusions narrowly. *Am. Econ. Ins. Co. v. Hughes*, 121 Or. App. 183, 186, 854 P.2d 500, 501 (1993).

Given Oregon's narrow construal of exclusions, OneBeacon cannot deny a duty to defend on the basis that each of the above constitute "pollutants." Mercury has not been construed as a pollutant. Plaintiffs do not allege the developers and strippers used in the photo process – and OneBeacon cannot go outside the Complaint to attempt to argue that any such developers and strippers fall within the definition of "pollutants."

To be excluded, "bodily injury" must be due to the accidental discharge, dispersal, seepage, migration, release or escape of "pollutants." A negligent failure to discover an accidental discharge, technical problems with treating the discharge, or not having the resources to address such accidental discharge would be covered under a commercial liability policy. *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 756, 15 Cal. Rptr. 2d 815

Laurie Bruyere
July 10, 2020
Page 15

(1993). The allegations in the Complaint certainly implicate TriQuint's alleged failure to address chemical exposures in the clean rooms.

The allegations in the Complaint state that Mr. Domion worked in proximity to the above substances, came into contact with the above substances, and used the above substances. The allegations do not claim a discharge[1], dispersal[2], seepage[3], migration[4], release[5], or escape[6] of the above substances. Rather, the allegations can be read as merely stating that Mr. Domion was in the same physical area of the substances. Further, Mr. Domion brings claims regarding his training regarding the above substances being improper, alleging that the improper training caused the injuries to Nicholas Domion as Mr. Domion would not have worked in the clean rooms had he known of the potential adverse reproductive impacts. Such allegations indicate "bodily injury" arising out of a failure to train, provide proper warnings, and proper protective equipment rather than an accidental dispersal or spill of toxic substances.

The Complaint is devoid of any allegations that indicate Nicholas Domion suffered injury due to a discharge, dispersal, seepage, migration, release or escape of pollutants similar to that which you would typically see in a case involving a pollution exclusion – a toxic spill of some sort. There are no allegations that Nicholas Domion has ever been in the clean room and thus his injuries arise out of chemical particulate exposure to his parent and/or on his parent's clothing/belongings in an instance where the parent himself is not alleged to have suffered bodily injuries. In no way are these facts similar to those where we typically see the pollution exclusion apply because there is no claimed discharge, dispersal, seepage, migration, release or escape of pollutants.

Although the allegations in the Complaint refer to chemicals and compounds, some of which are pollutants – there are other references to substances outside of the definition of pollutant and allegations unrelated to any discharge, dispersal, etc. of pollutants. Bodily injuries arising out of non-pollutants or arising out of events outside of a discharge, dispersal, etc. would fall outside of the pollution exclusion and, as written, the Complaint alleges such injuries. The pollution exclusion cannot be used to deny a duty to defend.

---

[1] Discharge means "to be released or thrown off." Webster's New Collegiate Dictionary.

[2] Dispersal is the "act or result of dispersing or scattering." Webster's New Collegiate Dictionary.

[3] Seepage is "' the process of seeping,' that is, 'flowing or passing slowly through fine pores or small openings.'" Webster's New Collegiate Dictionary.

[4] Migration is 'movement from one country, place, or locality to another' or 'changing position in an organism or substance.' Webster's New Collegiate Dictionary.

[5] A release is "a setting free or being set free; deliverance; liberation." Webster's New Collegiate Dictionary.

[6] An escape is "to get free; get away; get out; break loose." Webster's New Collegiate Dictionary.

LNIC000365

Laurie Bruyere
July 10, 2020
Page 16

### C. Electromagnetic Radiation Endorsement

The OneBeacon Policies include an electromagnetic radiation endorsement. That endorsement excludes from coverage, alleged bodily injuries arising out of exposure to "electromagnetic radiation". "Electromagnetic radiation" is defined as "magnetic energy, waves, fields, or forces generated, produced, distributed, transmitted or maintained by the charges, currents, frequencies, energy or forces of electricity that is generated, flowing or otherwise transmitted through or by way of the medium, methods and equipment designed to generate, produce, distribute, transport or transmit the electrical charges, currents, frequencies, energy or forces."

Clearly, the Complaint alleges "bodily injury" arising out of things other than exposure to electromagnetic radiation. The list above includes numerous substances outside of electromagnetic radiation. Further, the Complaint includes numerous allegations room design, training, and warnings. The Complaint alleges potentially covered claims that would not fall within this exclusion and OneBeacon cannot rely on this exclusion to preclude a duty to defend.

## VI. CONCLUSION

We hereby request that OneBeacon join in TriQuint's defense of this matter. OneBeacon owes reimbursement of its share of defense costs since the date of the first tender. The coverage position taken by OneBeacon makes inferences that require information outside of the Complaint. Under Oregon law, OneBeacon is confined to the allegations in the Complaint – which allege claims potentially falling within coverage. Thus, OneBeacon's duty to defend has been triggered.

We request that OneBeacon notify our office of its decision within fourteen days.

Please let us know if you have any questions regarding this tender or would like to discuss further.

Sincerely,

SCHEER.LAW PLLC

*Sent without signature to avoid delay*

Jennifer L. Crow

Encl.:   Exh. 1 – Complaint
         Exh. 2 – Expert Report

Cc: Mark P. Scheer (via e-mail)



Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610

**Nancy A. Brownstein**
206-757-8150 tel
206-757-7150 fax

nancybrownstein@dwt.com

August 7, 2020

Jennifer L. Crow
Scheer Law PLLC
2101 Fourth Ave,, Suite 830
Seattle, Washington  98121
jen@scheer.law

Re:    *Domion v. TriQuint Semiconductor, Inc.*

Dear Ms. Crow:

I am writing in response to your letter dated July 10, 2020 to Laurie Bruyere regarding the above referenced matter.  Your letter purports to "tender the defense and indemnity" of the above-referenced matter to OneBeacon America Insurance Company ("OneBeacon") under the General Liability ("GL") coverage parts of Policy Nos. 711009839-0001 and 711009839-0002 issued to TriQuint Semiconductor ("TriQuint") for the policy periods June 1, 2008 to June 1, 2009 ("08-09 Policy") and June 1, 2009 to June 1, 2010 ("09-10 Policy"), respectively.

As you are aware, on September 27, 2016, OneBeacon sent two letters to TriQuint.  One letter addressed coverage under the 08-09 Policy and the second letter addressed coverage under the 09-10 Policy.  As to the 08-09 policy, OneBeacon declined a defense and indemnity for the *Domion* action under GL coverage parts of the primary and Umbrella policies based, in large part, on the Employer's Liability exclusion.[1]  As to the 09-10 Policy, OneBeacon declined a defense and indemnity under the GL coverage parts but reserved its rights under the Umbrella Liability coverage form based on an endorsement that added Sentry's Employer Liability policy as underlying insurance.

---

[1] OneBeacon also cited the Pollution Exclusion and Electromagnetic Radiation exclusion as potentially barring coverage.  There is no Employers Liability coverage provided under the 08-09 Policy.

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.
4835-6982-5478v.1 0111446-000008

LNIC000367

August 7, 2020
Page 2


As you acknowledge, in Oregon "[w]hether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski*, 319 Or 397, 399 (1994). "An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, *without amendment,* impose liability for conduct covered by the policy." *Id.* (emphasis added). In this case, the complaint alleges, *inter alia*, that Pedro Domion was exposed to toxic chemicals and that Nicholas was injured as a result or consequence of that exposure.

Your letter asserts that the employers' liability exclusion does not apply to this matter for two reasons. First, you assert that the complaint does not allege that Pedro was injured and without an injury to the employee, the exclusion does not apply. Second, you assert that Nicholas's injuries are direct injuries and not a consequence of Pedro's exposure. In response to your first argument, the complaint does allege that Pedro was injured. *See* Complaint ¶ 91. ("As a result of TRIQUINT'S foregoing wrongful conduct and omissions, the Plaintiffs and Nicholas Domion sustained the injuries and damages claimed herein."). The complaint is replete with references to reproductive harm caused by exposure to the chemicals in the TriQuint facility. Second, there is no allegation that Nicholas's injuries were the result of a direct injury. The injuries are alleged to have been the result of, i.e., a consequence of Pedro's exposure. *See* Complaint ¶ 57. ("As a direct and proximate result and consequence of TRIQUINT'S wrongful conduct and Plaintiff Pedro Domion's exposure to the aforesaid chemical products and substances, Nicholas Domion sustained injuries and/or damages, and upon information and belief will continue to suffer injuries and damages, …").

I have not located any Oregon cases dealing with the employers liability exclusion in the context of an injury to an employee's child and you have apparently found none either. The cases that you cite, all from other jurisdictions with different facts, are not dispositive of the issues in the *Domion* matter. In both of those cases, the employee was not the father of the child, but the mother and the injuries were alleged to have occurred while the employee was pregnant. It is a completely different situation where the employee is the father and the injuries to the child are alleged to have resulted from the father's on-the-job exposure.

For example, in *Royal Ins. Co. of Am. v. Insignia Fin. Group, Inc.*, 323 Ill.App.3d 58, the complaint alleged that the mother received an electric shock. "The electric shock traveled through Stacie's uterus and shocked Robert as well." *Id.* at 60. The court found that this allegation clearly alleged a separate and direct injury to the unborn child. Similarly, in *Colony Ins. Co. v. Hearts with Hope Foundation*, 2018 WL 1089225 (U.S.D.C., S.D. TX), the complaint alleged that the mother was hit in the stomach "causing her amniotic sac to rupture *and* causing injury to VA." *Id.* at *1 (emphasis added). Again the court found this allegation to state a direct injury to the unborn child. Basing his decision on the allegations as pled, the court noted in a footnote that "[i]f the petition stated that the hit 'caused the amniotic sac to rupture, which

4835-6982-5478v.1 0111446-000008

August 7, 2020
Page 3

caused injury to VA,' the court might decide the case differently." *Id.* at *4 n.3. Thus, this case also involved allegations of a direct injury to the unborn child, which is not the case with the *Domion* action.

In reaching their conclusions, the courts in *Royal Ins.* and *Colony* also distinguished a New York case, *Oates v. State of New York*, 157 Misc.2d 618, in which the employers' liability exclusion was applied and whose facts are much closer to the *Domion* case. In *Oates*, the employee-mother was exposed to lead paint while pregnant with her child. The court found that "as much as [the child] was in utero during the alleged poisoning, we fail to see how she could have been injured without her mother having been exposed to the same poisonous condition, and her body serving, albeit involuntarily, as a conduit therefor." *Id.* at 626. Thus, in both *Royal Ins.* and *Colony*, the courts based their decisions on the allegations of the complaints in those cases and, finding that the complaints alleged direct injury to the child, held the employers liability exclusion did not apply. The complaint in the *Domion* action does not allege that Nicholas was directly exposed.

With respect to the Pollution Exclusion and the Electromagnetic Radiation Endorsement, OneBeacon's letter stated that those exclusions may bar coverage, but did not decline defense and indemnity based on those exclusions.[2]

At this time, OneBeacon disagrees with Liberty Mutual that it has a duty to defend or indemnify Triquint under the GL coverage parts of either the 2008 or 2009 policies and will not join in or contribute to Triquint's defense at this time.

Very truly yours

Davis Wright Tremaine LLP

Nancy A. Brownstein

---

[2] Although this letter does not address your arguments related to the pollution exclusion and electromagnetic radiation endorsement at length, OneBeacon does not concede that those exclusions are inapplicable and maintains its reservation of rights with respect to those exclusions.

4835-6982-5478v.1 0111446-000008

**Jennifer L Crow**
503-446-1767
jen@scheer.law
Licensed in OR, WA, ID & MT



September 3, 2020

<u>**VIA EMAIL**</u>

Ms. Nancy Anne Brownstein
Davis Wright Tremaine LLP
920 Fifth Ave Ste 3300
Seattle WA  98104
nancybrownstein@dwt.com

Re:    *Domion v. TriQuint Semiconductor, Inc.*
       Liberty Claim No.      :    WC604-A58856
       One Beacon Claim Nos.  :    0AB170997
       One Beacon Policy No.   :    711-00-98-39-0001
       Our File No.          :    170.801

Dear Nancy:

As you know, our office is acting on behalf of Liberty Northwest Insurance Corporation with respect to the above referenced matter.

We write in response to OneBeacon's denial of our tender related to the OneBeacon policies issued to our mutual insured TriQuint: Policy Nos. 711009839-0001 (policy period June 1, 2008 – June 1, 2009) and 711009839-0002 (policy period June 1, 2009 – June 1, 2010) (collectively, the "OneBeacon Policies").

## I.   <u>COVERAGE DISCUSSION</u>

OneBeacon continues to deny a duty to defend TriQuint under the Employer's Liability exclusion in the OneBeacon Policies.

To remind OneBeacon, an insurer's duty to defend is determined by comparing the terms of the insurance policy with the allegations of the complaint filed against the insured.  *Ledford v. Gutoski*, 319 Ore. 397, 399-400 (1994); *Marleau v. Truck Ins. Exch.,* 333 Ore. 82, 89 (2001); *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Mass. Bonding & Ins. Co.*, 235 Ore. App. 99, 119 (2010).

If the complaint provides any basis for a claim that is covered by the policy, there is duty to defend.  A duty to defend is owed if a complaint alleges both covered conduct and excluded conduct. *Abrams v. General Star Indem. Co.*, 335 Or 392, 399–400 (2003).  Oregon courts have articulated the broad duty-to-defend standard this way:

2101 Fourth Ave., Suite 830 • Seattle, WA 98121
Office (206) 800-4070   Direct (206) 436-3661
www.scheer.law

*Hill Declaration*

*Exhibit 7, Page 20 of 22*

Laurie Bruyere
September 3, 2020
Page 2

"[A] duty to defend exists whenever the factual allegations in the complaint would permit the presentation of evidence at trial of an activity covered by the policy." _Fireman's Fund Ins. Co. v. Ed Niemi Oil Co., Inc._, 2005 WL 3050460, at *1 (D. Or. Nov. 9, 2005) (citing _Schnitzer Inv. Corp. v. Certain Underwriters at Lloyd's of London_, 104 P.3d 1162, 1169 (Or. Ct. App. 2005)). OneBeacon is required to liberally construe the Complaint. _See Ledford,_ 319 Or. at 400.

First, OneBeacon disputes our position that the Complaint cannot be read as indicating that Pedro Domion himself was not injured.  Second, OneBeacon disputes that the Complaint can be read as indicating Nicholas Domion's injuries are direct injuries rather a consequence of Pedro Domion's exposure and injury.

We first address your position regarding whether or not Pedo Domion suffered a "bodily injury" as defined by the OneBeacon Policies.  While the Complaint uses the word "injury" with respect to both Pedro and Nicholas Domion – the Complaint does not allege any specifics regarding physical injury suffered by Pedro Domion.  The OneBeacon Policies tie the application of the Employer's Liability Exclusion to "bodily injury" as defined by the OneBeacon Policies – and not simply the word "injury" as used in the Complaint.  "Bodily Injury" is defined as "bodily injury, sickness or disease" in the OneBeacon Policies.  There are no allegations in the Complaint regarding Pedro Domion suffering bodily injury, sickness or disease.  Thus, the Complaint can reasonably be read as lacking allegations that Pedro Domion suffered a "bodily injury" as required for the application of the Employer's Liability Exclusion. OneBeacon attempts to conflate the use of the word "injury" in the Complaint as stating allegations of "bodily injury" as defined by the OneBeacon Policies.  Such an inference is not permitted when considering whether or not OneBeacon owes a duty to defend.

Second, we address OneBeacon's commentary that there are no allegations that Nicholas' injuries were the result of a direct injury, but rather that they are a consequential injury.  As you noted in your correspondence, the Complaint alleges that "[a]s a direct and proximate result and consequence of [Triquint's] wrongful conduct and Plaintiff Pedro Domion's exposure to the aforesaid chemical products and substances, Nicholas Domion sustained injuries and/or damages. . .'

The Complaint does not make clear whether or not the "bodily injury" suffered by Nicholas Domion was a direct injury or indirect injury.  The allegations in the Complaint refer to Pedro Domion's exposure – and that exposure may or may not have caused him any injury.  There are two ways that this injury could have occurred – either at conception or while in utero.  Neither is stated in the Complaint. OneBeacon makes the assumption that Pedro Domion's exposure affected him prior to conception, and that the injury occurred at conception.  Such allegations are missing in the Complaint, and the pleading can also be read as Pedro Domion being exposed after conception, and that exposure being carried home with him and that exposure then affecting Nicholas Domion.

Laurie Bruyere
September 3, 2020
Page 3


OneBeacon is correct that Oregon lacks case law on that issue.  That being said, the case law from other jurisdictions is persuasive in terms of how an Oregon court may resolve this issue and should be considered seriously.

While the case of *Royal Ins. Co. of Am. V. Insignia Fin. Group* involved clearer allegations as to direct injury to the child, that fact is in no way obviates the fact that Plaintiffs' Complaint does not specify whether the allegations of injury are direct or indirect as to this matter.  Importantly, the *Royal Ins. Co. of Am.* matter involved a precise injury occurring once, at a single point in time – an electric shock.  Here, we are addressing a longer term exposure where such exposure was carried home on Pedro Domion's clothing (and without having a significant impact on his health as there are no allegations for his own medical related damages).  This, along with how the allegations in the Complaint are phrased, certainly indicates the Complaint can be read as alleging a direct injury to Nicholas Domion.

One Beacon's reliance on the *Oates* case is misplaced.  That court found that the child must have been injured due to their simultaneous exposure to the poisonous condition.  To be clear, there are no allegations that Mrs. Domion was injured at all – and OneBeacon cannot assume that Nicholas Domion was only injured through his mother being injured through Pedro Domion.  The Complaint is devoid of any such assertions.

Plainly stated, the Complaint does not state whether Nicholas Domion was directly exposed or indirectly exposed.  Because neither is stated, either reading is plausible and thus either can give rise to a duty to defend.

## II.  __CONCLUSION__

We hereby renew our request that OneBeacon join in TriQuint's defense of this matter.  OneBeacon owes reimbursement of its share of defense costs since the date of the first tender.  OneBeacon's duty to defend has been triggered.

Please let us know if you have any questions regarding this tender or would like to discuss further.

Sincerely,

SCHEER.LAW PLLC

*Sent without signature to avoid delay*

Jennifer L. Crow

cc:    Mark P. Scheer (via e-mail)