IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LIBERTY NORTHWEST INSURANCE CORPORATION, an Oregon corporation,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York corporation, as transferee of BEDIVERE INSURANCE COMPANY, as successor to ONEBEACON AMERICA INSURANCE COMPANY/LAMORAK INUSRANCE COMPANY,<br><br>　　　　　　Defendant. | Case No.: 3:23-cv-00181-AN<br><br><br>OPINION AND ORDER |

Plaintiff Liberty Northwest Insurance Corporation ("Liberty Northwest") filed this action in Multnomah County Circuit Court against eight defendants, seeking a declaratory judgment that the defendants owed a duty to defend the parties' mutual insured, TriQuint Semiconductor, Inc. ("TriQuint") and are obligated under Oregon Revised Statute ("ORS") §§ 20.010 *et seq.* to contribute a proper share of the defense costs that Liberty Northwest incurred defending TriQuint. Defendants removed the action to federal court, and all defendants except defendant Atlantic Specialty Insurance Company ("ASIC") were subsequently dismissed. On December 29, 2023, the parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Def. Mot. Summ. J. ("Def. Mot."), ECF [22]; Pl. Mot. Summ. J. ("Pl. Mot."), ECF [24]. The Court heard oral argument from the parties on October 3, 2024. For the reasons set forth below, ASIC's motion is GRANTED, and Liberty Northwest's motion is DENIED.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a

1

motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). When cross-motions for summary judgment are filed, each party's evidence is considered, "regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases omitted). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

**A.    Factual Background**

    1.    *Underlying Action*

This action arises from the allegations in the underlying suit, *Domion v. TriQuint Semiconductor, Inc.*, which was filed in Multnomah County Circuit Court on July 1, 2016, as Case No. 16CV20968, and removed to federal court as Case No. 3:16-cv-01852-SB. Def. Mot. 2-3 & n.1; Decl.

Chester D. Hill Supp. Pl. Mot. ("Hill Decl."), ECF [25], ¶ 5. As alleged in the underlying complaint, TriQuint owned and operated a semiconductor manufacturing facility where Pedro Domion worked as an employee. First Am. Compl. Ex. 1 ("Underlying Compl."), ECF [9-1], ¶¶ 6; Def. Mot. 4. While working for TriQuint, Pedro Domion was required to use, come into contact with, or work in proximity to chemical products and substances that were utilized in the manufacture of semiconductor products or components, including "some or all of the following, among others":

> "a) Ethylene glycol ethers, used as individual solvents and also present as constituents in various photoresist formulations and systems;
> b) Propylene glycol ethers, used as individual solvents and also present as constituents in various photoresist formulations and systems;
> c) Photoresist systems and their respective ingredients over and above ethylene and propylene-based glycol ethers, specifically including the solvents xylene, n-butyl acetate, and n-methyl pyrrolidone, the catalyst trihydroxy benzophenone (THBP) and the diazo napthoquinone (DNQ) resins;
> d) Chemicals used in various plating and etching processes;
> e) Cyanide;
> f) CEMIK;
> g) Fluorine compounds including ammonium fluoride, aluminum fluoride, boron trifluoride and sulfur hexafluoride;
> h) Chlorinated compounds including hydrogen chloride, ammonium chloride, aluminum chloride and boron trichloride;
> i) Acids including hydrofluoric acid, hydrochloric acid and sulfuric acid;
> j) Radio frequency radiation and ionizing radiation used both in association with wafer processing areas process chemicals and for the purpose of generating new chemical mixtures, e.g., 'plasmas;'
> k) Arsenic compounds including gallium arsenide, inorganic arsenic and arsine gas;
> l) Volatile organic degreasing and cleaning solvents including trichloroethylene, methylene chloride, stabilized trichloroethane, Freon 113 and stabilizers added to these degreasing solvents such as epichlorohydrin and epichlorohydrin 1, 4 dioxane;
> m) Organic solvents such as benzene, toluene, acetone, methyl ethyl ketone (MEK) and methanol;
> n) Hexamethyldisilizane, or HMDS;
> o) Mercury;
> p) Acetone;
> q) Phosphorus compounds including Phosphine gas;
> r) Isopropyl Alcohol, or IPA;
> s) Developers used in the photo process;
> t) Strippers and/or stripping agents used in the photo process; and
> u) Epoxy resin-based glues made from epichlorohydrin and bisphenol A."

Underlying Compl. ¶¶ 8-9; Pl. Mot. 6-7. TriQuint manufactured, supplied, or provided these chemical products and substances to Pedro Domion for use at TriQuint's facility. Underlying Compl. ¶ 10; Pl. Mot.

6; Def. Mot. 4. As a result of his work and TriQuint's actions and omissions, Pedro Domion had repeated and prolonged contact with and exposure to some or all of these chemical products and substances. Underlying Compl. ¶¶ 13, 38-52, 65, 74-77, 83-84; Def. Mot. 4-5.

The underlying complaint further alleged that Pedro Domion's son, Nicholas, was born on July 4, 2009. Underlying Compl. ¶¶ 3-4; Def. Mot. 5. As a result of Pedro Domion's exposure to the chemical products and substances, Nicholas Domion was born with significant injuries, including:

"a)   9P chromosomal deletion;
 b)   cranial stenosis;
 c)   undescended testicles;
 d)   heart defects;
 e)   mental and cognitive impairment;
 f)   internal injuries;
 g)   pain and suffering;
 h)   mental and emotional anguish;
 i)   loss of normal life, including the pursuit of pleasurable aspects of life;
      [and . . .]
 n)   other injuries and damages."

Underlying Compl. ¶ 57; Pl. Mot. 7. The plaintiffs, Pedro, Ashley (Pedro's wife and Nicholas's mother), and Nicholas Domion, sought $220 million in damages for Nicholas's injuries and $50 million in damages for parental loss of consortium. Underlying Compl. ¶¶ 28-29; Pl. Mot. 7. The underlying action was dismissed with prejudice on April 26, 2021. Pl. Mot. 8.

During the *Domion* suit, TriQuint had commercial general liability policies with OneBeacon America Insurance Company ("OneBeacon"), to which ASIC is the successor in interest, and a workers' compensation and employer's liability policy with Liberty Northwest. Def. Mot. 6-7 & n.3, 12; Pl. Mot. 2. TriQuint tendered its defense to OneBeacon and Liberty Northwest. Pl. Mot. 7-8; Def. Mot. 6. Liberty Northwest provided TriQuint with a defense, but OneBeacon denied TriQuint's tender. Pl. Mot. 7-8; Def. Mot. 6. Liberty Northwest also tendered TriQuint's defense to OneBeacon, which OneBeacon also denied. Pl. Mot. 8. OneBeacon denied TriQuint a defense on the grounds that its policies contained an employer's liability exclusion, pollution exclusion, and electromagnetic radiation endorsement. Pl. Mot. 8; Def. Mot. 6.

2.     *Insurance Policies*

As noted above, during the relevant period, OneBeacon issued two commercial general liability policies to TriQuint: one with a policy period from June 1, 2008, to June 1, 2009, and policy number 711-00-98-39-0001 (the "2008-2009 Primary Policy"), and another with a policy period from June 1, 2009, to June 1, 2010, and policy number 711-00-98-39-0002 (the "2009-2010 Primary Policy") (collectively, the "OneBeacon Policies"). Def. Mot. 6-7, 12. The OneBeacon Policies contain the same coverage, definitions, and relevant exclusions. *Id.* at 12-13. Additionally, Liberty Northwest issued a workers' compensation and employers liability policy to TriQuint with a policy period from June 1, 2008, to June 1, 2009, and policy number WC4-1NC-014750-018-93. Pl. Mot. 2.

The OneBeacon Policies provide, in relevant part:

**"COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

   a.   [OneBeacon] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. [OneBeacon] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [OneBeacon] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply . . . .

   b.   This insurance applies to 'bodily injury' . . . only if:
   (1)   The 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory';
   (2)   The 'bodily injury' . . . occurs during the policy period; and
   (3)   Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' . . . had occurred, in whole or in part. If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'employee' knew, prior to the policy period, that the 'bodily injury' . . . occurred, then any continuation, change or resumption of such 'bodily injury' . . . during or after the policy period will be deemed to have been known prior to the policy period."

Def. Mot. 7-8; Pl. Mot. 3. The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time[,]" and an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general

5

harmful conditions."  Def. Mot. 9; Pl. Mot. 3.

The OneBeacon Policies also include, in relevant part, the following exclusions:

"**2.**     **Exclusions**

This insurance does not apply to: . . .

    **e.**     **Employer's Liability**
'Bodily injury' to:
        (1)     An 'employee" of the insured arising out of and in the course of:
            (a)     Employment by the insured; or
            (b)     Performing duties related to the conduct of the insured's business; or
        (2)     The spouse, child, parent, brother or sister of that 'employee' as a consequence of ['bodily injury' to the employee]. . . .

    **f.**     **Pollution**
        (1)     'Bodily injury' . . . arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':
            (a)     At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .
            (b)     At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
            (c)     Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for . . . [a]ny insured or . . . [a]ny person or organization for whom [the insured] may be legally responsible; or
            (d)     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the 'pollutants' are brought on or to the premises, site or location in connection with such operations by such insured contractor or subcontractor. . . ."

Def. Mot. 9-11; Pl. Mot. 4.  The policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals[,] and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  Def. Mot. 9; Pl. Mot. 3-4.

Finally, the OneBeacon Policies include, in relevant part, the following endorsement:

"**ELECTROMAGNETIC RADIATION – EXCLUSION OF COVERAGE**

This endorsement modifies insurance provided under the following:

6

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to bodily injury . . . arising out of or allegedly due to exposure to or contact with Electromagnetic Radiation.

The Company has no obligation under this insurance:
  (1)   to investigate, defend or settle any claim or suit against any insured alleging actual, threateded [sic], perceived, latent, sudden and accidental or intentional injury of any kind or nature or damage of any kind or nature to persons . . . which arises out of or is alleged to have been caused by or contributed to by the exposures to or contact with the existence of Electromagnetic Radiation.
  (2)   to pay any damages, judgments, settlements, loss penalties, assessments, apportionments, costs or expenses including damages mandated, required or ordered by local, state or federal statute and/or legislative action and/or damage as stated in (1) above or in complying with any action authorized by law, and relating to such injury or damages.

The definition of Electromagnetic Radiation includes but is not limited to magnetic energy, waves, fields, or forces generated, produced, distributed, transmitted or maintained by the charges, currents, frequencies, energy or forces of electricity that is generated, flowing or otherwise transmitted through or by way of the medium, methods and equipment designed to generate, produce, distribute, transport or transmit the electrical charges, currents, frequencies, energy or forces."

Def. Mot. 8; Pl. Mot. 5.

**B.     Procedural Background**

Liberty Northwest initiated this lawsuit against ASIC and the former defendants in Multnomah County Circuit Court on December 29, 2022. Defendants subsequently removed the case to this Court on February 7, 2023. The Court dismissed all defendants except ASIC pursuant to the parties' stipulation on February 10, 2023. Stip. Ltd. J. Dismissal Without Prejudice, ECF [6]. Liberty Northwest filed an amended complaint on February 13, 2023, seeking declaratory relief that pursuant to the OneBeacon Policies, OneBeacon owed a duty to defend and ASIC is obligated to contribute OneBeacon's proper share of the defense costs, as well as a monetary award for the defense-related costs. ASIC and Liberty Northwest now both move for summary judgment on both of Liberty Northwest's claims.

## DISCUSSION

ASIC moves for a finding that, as a matter of law, OneBeacon did not have a duty to defend TriQuint in the underlying suit. Def. Mot. 3-4. Liberty Northwest moves for a finding that, as a matter of

law, OneBeacon had a duty to defend, and ASIC is thus obligated to contribute OneBeacon's proper share of the defense costs that Liberty Northwest incurred. Pl. Mot. 2.

### A. Duty to Defend

Oregon law applies to the contracts at issue in this case. *Alexander Mfg., Inc. Emp. Stock Ownership Plan & Tr. v. Ill. Union Ins. Co.*, 560 F.3d 984, 986 (9th Cir. 2009). In Oregon, the interpretation of an insurance contract is a question of law. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649, 147 P.3d 329 (2006) (citing *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469, 836 P.2d 703 (1992)). A court determines an insurer's duty to defend a lawsuit by looking only to the facts alleged in the underlying complaint and to the text of the insurance policy. *Ledford v. Gutoski*, 319 Or. 397, 400, 877 P.2d 80 (1994) (en banc). First, the court must determine whether the complaint contains allegations of covered conduct. *Abrams v. Gen. Star Indem. Co.*, 335 Or. 392, 400, 67 P.3d 931 (2003). "If it does, . . . then the insurer has a duty to defend, even if the complaint also includes allegations of excluded conduct." *Id.* "If the complaint does not contain allegations of covered conduct, . . . then the insurer has no duty to defend." *Id.*; *see Rogowski v. Safeco Ins. Co. of Or.*, 306 Or. App. 505, 510, 473 P.3d 111 (2020) ("If the complaint asserts a claim covered by the policy, the insurer has a duty to defend, even if the complaint also asserts claims that fall outside the policy's coverage.").

"Regardless of the presence of ambiguity or [lack of clarity] in the complaint, the key question is whether the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy." *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 117, 293 P.3d 1036 (2012) (citing *Blohm v. Glens Falls Ins. Co.*, 231 Or. 410, 416, 373 P.2d 412 (1962)). "[A]ny doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action will be resolved in the insured's favor." *Minnis v. Or. Mut. Ins. Co.*, 162 Or. App. 198, 209, 986 P.2d 77 (1999), *rev'd in part on other grounds*, 334 Or. 191, 48 P.3d 137 (2002) (internal quotation marks and citations omitted).

The parties do not dispute that the terms of the OneBeacon Policies that impose coverage are met: the underlying action is a "suit" seeking damages because of "bodily injury," and the bodily injury

was allegedly caused by an "occurrence" within the "coverage territory" and the policy period. The parties disagree solely on whether the Employer's Liability Exclusion, Pollution Exclusion, and Electromagnetic Radiation Endorsement relieved OneBeacon of its duty to defend.

    1.    *Employer's Liability Exclusion*

Under the terms of the Employer's Liability Exclusion, the OneBeacon Policies exclude coverage for allegations of "bodily injury" to an "employee" of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business; or to the spouse, child, parent, brother, or sister of that employee as a consequence of "bodily injury" to the employee.

ASIC argues that the underlying complaint repeatedly alleged that Pedro Domion was injured by exposure to toxic chemicals at work and that Nicholas Domion was injured as a result or consequence of Pedro Domion's exposure to toxic chemicals at work. Because the allegations stated claims for bodily injury arising out of Pedro Domion's employment, ASIC argues that the Employer's Liability Exclusion relieved OneBeacon of its duty to defend. Liberty Northwest argues that the Employer's Liability Exclusion excludes from coverage bodily injury to an employee's child only "as a consequence of" bodily injury to an employee arising out of their employment. Liberty Northwest further argues that the complaint could reasonably be understood to allege that Nicholas Domion's injuries occurred in the absence of any injury to Pedro Domion. Because Nicholas Domion's injuries did not necessarily arise only "as a consequence of" bodily injury to Pedro Domion, Liberty Northwest argues that the Employer's Liability Exclusion did not relieve OneBeacon of its duty to defend.

    a.    Bodily Injury to Pedro Domion Arising Out of and in the Course of Employment

With respect to the allegations regarding injury to Pedro Domion, the underlying complaint alleged that Domion's employment with TriQuint resulted in his repeated and prolonged contact with and exposure to certain chemical products and substances. Underlying Compl. ¶¶ 6-13. All of Pedro Domion's allegations concerned TriQuint's actions and inactions and arose out of his employment with TriQuint. *Id.* As such, to the extent that the underlying complaint alleged that contact with and exposure to certain

9

chemicals resulted in bodily injury to Pedro Domion, including reproductive harms and mental anguish, those allegations concern "bodily injury" to a TriQuint "employee" arising out of and in the course of employment by TriQuint. Accordingly, those allegations were excluded from coverage by the Employer's Liability Exclusion.

> b. Bodily Injury to Nicholas and Ashley Domion as a Consequence of Bodily Injury to Pedro Domion

However, the Employer's Liability Exclusion did not exclude from coverage the allegations regarding Nicholas or Ashley Domion's injuries. In *Bresee Homes*, the defendant had a duty to defend because the policy provided a basis for coverage of property damage claims that an exclusion did not eliminate. 353 Or. at 125. The policy exclusion at issue excluded from coverage any property damage that occurred after the insured's work was completed. *Id.* at 121-22. However, the underlying allegations did not state whether the claimed damages occurred before or after the completion of the insured's work. *Id.* at 122. However, "[f]rom all that appear[ed] from a reading of the complaint, the described property damage occurred, or could have occurred when [the insured]'s work was neither completed nor 'deemed complete' under the [exclusion] as defined in the policy." *Id.* Therefore, the defendant still had a duty to defend the insured.

Here, although the underlying complaint was replete with references to reproductive harms and health risks to TriQuint's employees, including Pedro Domion, caused by exposure to the chemical products and substances, the complaint never alleged that Nicholas or Ashley Domion was injured "as a consequence of" bodily injury to Pedro Domion. As Liberty Northwest argues, the underlying complaint did not even allege that Pedro Domion was injured from his exposure. Reading the underlying complaint in full and viewing the facts in the light most favorable to Liberty Northwest, the underlying complaint alleged only that Nicholas Domion sustained bodily injury "as a direct and proximate result and consequence of" Pedro Domion's exposure to the chemicals and that Pedro and Ashley Domion sustained mental anguish and other damages as a consequence of their son's injury. *See* Underlying Compl. ¶¶ 54, 57, 68, 80-81, 91, 92-95. Like in *Bresee Homes*, where the alleged facts did not establish that the exclusion

10

applied and thus provided a basis for coverage, here, the allegations did not definitively establish that the Employer's Liability Exclusion applied, and TriQuint could have had liability for conduct covered by the policies.  For example, as Liberty Northwest argues, the underlying complaint could reasonably be interpreted to allege that Nicholas Domion was injured because Pedro Domion brought the chemical products and substances home with him on his clothes, which exposed Ashley Domion to the chemicals and thereby caused injury to their son.  Because the allegations relating to Nicholas and Ashley Domion's injuries were not excluded from coverage by the Employer's Liability Exclusion, this exclusion alone did not relieve OneBeacon of its duty to defend.

      2.    *Pollution Exclusion*

Under the terms of the Pollution Exclusion, the OneBeacon Policies exclude coverage for allegations of "bodily injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at or from the insured's premises or other specified locations. The parties do not dispute that the alleged chemical products and substances fall within the policies' definition of "pollutants."

ASIC argues that the underlying complaint repeatedly alleged that Pedro Domion was exposed to chemicals that, in turn, harmed his son.  ASIC argues that the underlying complaint specifically alleged that Pedro Domion was exposed to or affected by "reproductively toxic, genotoxic, mutagenic, hazardous, and teratogenic chemicals, including the chemical products and substances."  Def. Mot. 19. Because the injuries arose from Pedro Domion's exposure to pollutants, ASIC argues that OneBeacon had no duty to defend.  Liberty Northwest argues that the Pollution Exclusion did not relieve OneBeacon of its duty to defend because the underlying complaint did not specifically allege that the chemicals "discharge[d], dispers[ed], seep[ed], migrat[ed], release[d] or escape[d]," as required by the exclusion. Liberty Northwest further argues that as alleged, the chemical products and substances were exactly where they were supposed to be, leaving open the possibility that Pedro Domion's "contact occurred through other means."  Pl. Mot. 12.

While the Employer's Liability Exclusion did not exclude from coverage the allegations

11

regarding Nicholas or Ashley Domion's injuries, the Pollution Exclusion did. It is true that the underlying complaint does not explicitly state that the chemical products and substances discharged, dispersed, seeped, migrated, released, or escaped. However, as alleged, Pedro Domion "worked in proximity to," "came into contact with," or "was exposed to" the chemical products and substances as part of his job duties. Underlying Compl. ¶¶ 6-13. Reading the underlying complaint in full, TriQuint allegedly manufactured, supplied, or provided the chemicals for Pedro Domion to use at work at TriQuint's facilities, and Pedro Domion's exposure to the chemical products and substances resulted from TriQuint's alleged failure to design or configure ventilation, exhaust, or air circulation systems that would remove the chemicals from the recirculated air; to properly protect workers from inhalation or skin exposure to the chemicals; or to design, approve, or implement proper chemical handling and disposal policies. *Id.* ¶¶ 10, 13, 31-36, 38-52, 60-65, 74-77, 83-84. Even construing the facts in the light most favorable to plaintiff, the underlying complaint cannot reasonably be interpreted to allege that Pedro Domion came into contact with or was exposed to the chemical products and substances without some sort of discharge, dispersal, or release of such chemicals. Furthermore, as alleged, Nicholas and Ashley Domion's injuries "were caused or contributed to by" or were "a direct and proximate result and consequence of"—*i.e.*, arose out of—Pedro Domion's exposure to the chemicals, regardless of whether Pedro Domion was injured by that exposure. *Id.* ¶¶ 54, 57, 68, 80-81, 91, 92-95. Because the underlying complaint alleged "bodily injury" arising out of the improper discharge, dispersal, or release of pollutants at TriQuint's facilities, the Pollution Exclusion relieved OneBeacon of its duty to defend.

       3.       *Electromagnetic Radiation Endorsement*

Finally, under the terms of the Electromagnetic Radiation Endorsement, the OneBeacon Policies exclude coverage for allegations of "bodily injury" arising out of exposure to or contact with electromagnetic radiation.

ASIC argues that OneBeacon did not have a duty to defend because the underlying complaint alleged that Pedro Domion suffered injuries because of his exposure to, among other things, radiation. Liberty Northwest argues that because the underlying complaint alleged bodily injury arising out

of exposure to numerous things other than electromagnetic radiation, OneBeacon had a duty to defend.

The Electromagnetic Radiation Endorsement alone did not relieve OneBeacon of its duty to defend because the underlying complaint alleged that Pedro Domion was exposed to numerous substances other than electromagnetic radiation. However, as explained above, because the Employer's Liability Exclusion and Pollution Exclusion together excluded from coverage all the underlying allegations, OneBeacon was relieved from its duty to defend.

Accordingly, the Court finds that the OneBeacon Policies did not impose on OneBeacon a duty to defend TriQuint in the underlying action.

**B.     Contribution**

"[T]he right to equitable contribution . . . turns on whether the defendant insurer had a duty to defend or indemnify." *Atl. Specialty Ins. Co. v. Or. Sch. Bds. Ass'n Prop. & Cas. Coverage for Educ. Tr.*, 649 F. Supp. 3d 998, 1015 (D. Or. 2022). Because OneBeacon had no duty to defend TriQuint in the underlying action for the reasons stated above, Liberty Northwest is not entitled to contribution from ASIC.

## CONCLUSION

For the foregoing reasons, defendant ASIC's Motion for Summary Judgment, ECF [22], is GRANTED, and plaintiff Liberty Northwest's Motion for Summary Judgment, ECF [24], is DENIED. This case is dismissed.

IT IS SO ORDERED.

DATED this 5th day of November, 2024.

_____
Adrienne Nelson
United States District Judge